(57 Misc. Rep. 42.)

### In re SHERIDAN.

(Supreme Court, Special Term, New York County. September 17, 1907.)

ELECTIONS—PRIMARY ELECTIONS.

Under Primary Election Law, Laws 1898, pp. 332, 341, c. 179, § 4, subd. 4, requiring the chairman of the general committee of each political party to deliver a statement of the conventions, committees, and offices for which delegates, candidates, etc., are to be elected at a primary, and the number of delegates and members of committees to be elected in each "unit of representation," and section 2, providing that "unit of representation" shall apply to an assembly district, etc., a rule of the general committee of a political party, which provides that the unit of representation shall be the assembly district, is valid, and a statement specifying the number of delegates, etc., to be elected in each "unit of representation" is sufficient, though it permits the participation in the nomination of candidates for offices on a smaller unit by those who cannot vote for the candidates at the general election, notwithstanding Election Law, Laws 1896, pp. 913, 922, c. 909, §§ 34, 53, defining a qualified elector; the election law not affecting the primary election law subsequently enacted.

Application by John V. Sheridan to review the decision of the board of elections of the city of New York in the matter of the application of Michael J. Redmond to correct the statement filed by the chairman of the general committee of the Democratic-Republican party of New York county, in so far as the same affects the Forty-First aldermanic district of the city of New York. Determination of the board of elections reversed, with directions.

Daniel F. Cohalan, for applicant.
Francis K. Pendleton, for board of elections.

SEABURY, J. This is an application to review the determination of the board of elections of the city of New York sustaining certain objections urged to the call or notice filed by the chairman of the general committee of the Democratic party of the county of New York for the Democratic primary election to be held September 24, 1907, and for an order directing the board of election to publish the call or notice as required by statute. Although there are seven applications now made, but a single question of law is presented for determination. On September 3, 1907, the chairman of the general committee of the Democratic party of the county of New York certified and delivered to the custodian of primary records a statement of the conventions, commit-

tees, members, or candidates to be elected, specifying the number of delegates to conventions and members of the committee to be elected "in each unit of representation." This statement was filed pursuant to subdivision 4 of section 4 of the primary election law (Laws 1898, p. 341, c. 179). Objections were filed to this statement upon the ground that under it enrolled members of the Democratic party would be permitted to vote for delegates to aldermanic and Municipal Court conventions in districts other than those in which said enrolled members resided, and thereby participate in the nominations of candidates for office for whom they could not vote at the general election. After a hearing had, upon notice to the parties interested, the board of elections, on September 12, 1907, adopted resolutions sustaining the objections and notified the chairman of the general committee of the Democratic party that the statement filed by him was rejected, and requested him to certify and file with said board a correct statement. The board of elections sustained the objections to the call or statement on the ground that in certain districts, where the assembly district is not coterminous with the aldermanic district and Municipal Court district, the unit of representation should not be the assembly district, but some smaller unit which is within the boundaries of the aldermanic or Municipal Court districts.

The question presented for determination is whether the specification in the call or statement of the assembly district as the unit of representation is valid, when the assembly district is not coterminous with the aldermanic or Municipal Court districts. This question must be determined by reference to the provisions of the statute in relation to this subject. Subdivision 4 of section 4 of the primary election law provides as follows:

"At least twenty days before each official primary day the chairman of the general committee of each party subject to the provisions of this act shall certify and deliver to the custodian of primary records a statement of the conventions, committees and offices for which delegates, members or candidates, as the case may be, are to be elected thereat, and the number of delegates to conventions and members of committees to be elected in each unit of representation."

The statement or call filed by the chairman of the general committee of the Democratic party fully complied with this section, provided that it specified a lawful "unit of representation." The question, therefore, is not whether the statement or call specified the fairest possible "unit of representation," but whether it specified a lawful "unit of representation."

Section 2 of the primary election law provides that:

"The term 'unit of representation' shall apply to an election district, a ward of a city, an assembly district, a congressional district, a senatorial district or any other political subdivision of the state which by the rules and regulations of a party may be the unit from which members of any political convention or committee to which this act is applicable shall be chosen."

Thus it is clear that the term "unit of representation" as used in the primary election law may by the rules and regulations of a party be made to apply to an assembly district. To determine, therefore, whether the designation of the assembly district as the "unit of rep-

resentation" is lawful, we must inquire as to the rules and regulations of the Democratic party on this subject.

Article 2 of the rules and regulations of the "Democratic-Republican General Committees of the County of New York" provides that:

"The unit of representation to be observed in the election of delegates to the county general committee and to the several nominating conventions shall be the assembly district and the annexed district. Where a portion of an assembly district is within the political division for which the committee or convention is elected, such portion shall be deemed to be an assembly district for the purpose of representation, and the rules and regulations applying to an assembly district shall in all things apply to such portion of an assembly district."

This rule unquestionably fixes the assembly district as the "unit of representation," except in one contingency, which is different from that existing in any of the applications now before the court. In the Matter of Nagle, Mr. Justice O'Gorman determined that the "unit of representation" within the Democratic party in the county of New York was the assembly district. N. Y. Law Journal, September 4, 1902. The party rules then under consideration were similar to those now before the court. This determination was affirmed in the Appellate Division. 76 App. Div. 619, 79 N. Y. Supp. 1139. It is evident, therefore, that in so far as the provisions of the primary election law are concerned the designation of the assembly district as the "unit of representation" is a valid designation, unless it is in violation "of any other law" (subdivisions 1, 2, of section 9 of the primary election law).

The board of election contends that such a designation is in violation of section 53 of the election law (Laws 1896, p. 922, c. 909). This section provides that:

"No person shall be entitled to vote at any primary unless he may be qualified to vote for the officers to be nominated thereat on the day of election. They shall possess such other qualifications as shall be authorized by the regulations and usages of the political party or independent body holding the same."

The election law from which this section is quoted was passed in 1896, and cannot be held to refer to the primary election law, which was not adopted until 1898. The qualifications contemplated by section 53 of the election law are evidently those which are specified in section 34 of the election law. Section 34 of the election law contains general provisions as to the qualifications of an elector and provides that:

"A qualified elector is a male citizen who is or will be on the day of election twenty-one years of age, who has been an inhabitant of the state for one year next preceding the election and for the last four months a resident of the county and for the last thirty days a resident of the election district in which he may offer his vote."

Thus construed, there is no conflict between the provisions of section 53 of the election law and those provisions of the primary election law, quoted above, which permit a party organization by its rules to designate an assembly district as a "unit of representation." To adopt the construction of the board of election is to hold that the provisions of the election law and the primary election law are in direct conflict.

The proper construction to be placed upon these statutes is that which I have indicated, and conforms to the well-established canon of statutory construction which harmonizes the provisions of both statutes and gives effect to all of the provisions of each.

These applications now before the court must be determined by the plain provisions of the statute, and not by the adoption of a forced construction for the purpose of avoiding certain hardships which it is assumed would result in certain districts if the statutory provisions are followed. If the existing statutes do not compel political organizations to adopt the fairest possible "unit of representation," it is entirely within the province of the Legislature to remedy the situation by appropriate amendment. But the functions of the board of elections are not legislative, and it is not within its province nor within that of the courts to attempt by constructions which do violence to the plain provisions of the statute to remedy what may be conceived to be defective in the existing law.

It follows that the determination of the board of elections upon the objections to the call or statement should be reversed, and the board of elections should be directed to publish the call as provided by law and to print the ballots in substantial conformity to the usual forms.

Settle order on notice.